IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | :<br>:<br>: |
| v. | :<br>: CRIMINAL ACTION NO.<br>: 1:19-CR-278-LMM-JSA |
| WAYNE ELLIOTT, | :<br>:<br>: |
| Defendant. | : |

## **ORDER**

This case comes before the Court on the Magistrate Judge's Report and Recommendation ("R&R") [176], recommending that Defendant's Motion to Suppress [72], Motion to Suppress Statements [74], and Supplemental Motion to Suppress [82] be denied. Pursuant to 28 U.S.C. § 636(b)(1), Defendant filed Objections to the R&R [179]. After due consideration, the Court enters the following Order:

**I.   BACKGROUND**

On July 24, 2019, Defendant was indicted by a grand jury sitting in the Northern District of Georgia. Dkt. No. [10]. The indictment charges Defendant with conspiracy to distribute a controlled substance and attempted possession of a controlled substance with the intent to distribute. Id. at 1–4. Specifically, the indictment alleges that Defendant conspired to distribute and attempted possession of at least 500 grams of methamphetamine. Id.

Defendant moved to suppress evidence seized and statements made during two encounters with officers. Dkt. Nos. [72, 74, 82]. The Court briefly summarizes the encounters but notes that the Magistrate Judge more fully describes both in the R&R. See Dkt. No. [176] at 2–8.

On the night of June 1, 2019, officers received information that a co-Defendant planned to deliver methamphetamine to Defendant's home in North Carolina. Dkt. No. [165] at 14–15. At 1:45 AM on June 2, officers visited the home and Defendant verbally consented to a limited search of his home. Id. 23–24. Defendant also allowed the officers to examine two cell phones. Id. at 37–38. Additionally, the officers asked where Defendant kept the money he planned to use to pay for the incoming methamphetamine. Id. at 26. In response, Defendant led the officers to the oven, which held a large bundle of cash. Id. at 29, 128–29. The officers then seized the bundle of cash, as well as one cell phone that Defendant identified as the one he used to communicate about drug transactions. Id. at 29, 37–38. Defendant was not read his Miranda rights at any point during this encounter. Id. at 10.

Later, on August 6, 2019, officers arrested Defendant and placed him in the front seat of a police car as they drove to jail. Id. at 136–37. In the first fifteen minutes of the ride, Defendant told the arresting officer that he liked him and was willing to cooperate. Id. at 137. Immediately after these statements, the officer read Defendant his Miranda rights. Id. at 137–38.

The Magistrate Judge held an evidentiary hearing on Defendant's Motions to Suppress on January 29, 2021. The parties then filed post-hearing briefs, Dkt. Nos. [172–174], and the Magistrate Judge ultimately recommended that Defendant's Motions to Suppress be denied, Dkt. No. [176]. Defendant objected to the Magistrate Judge's recommendation. Dkt. No. [179]. The matter is now ripe for the Court's review.

## II. LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate's Report and Recommendation for clear error if no objections are filed to the report. 28 U.S.C. § 636(b)(1). If a party files objections, however, the district court must determine *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id.; Fed. R. Crim. P. 59(b)(3). As Defendant filed objections, the Court reviews the Magistrate Judge's challenged recommendations on a *de novo* basis. 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

Defendant raises four objections to the R&R. Dkt. No. [179]. He incorporates his arguments from his earlier Motions to Suppress, Dkt. Nos. [72, 74, 82], so the Court often refers to those Motions. The four objections are that (1) Defendant was in custody during the June 2, 2019 encounter; (2) his consent to search was not voluntary; (3) the seizures of his cash and phone were improper; and (4) he was interrogated during the August 6, 2019 encounter. The Court addresses each objection in turn.

**A. Custodial Status During Home Encounter**

First, Defendant argues that he was in custody during the June 2, 2019 encounter and should have received Miranda warnings. Dkt. No. [179] ¶ 3. The Magistrate Judge held that Defendant was not in custody during this encounter. Dkt. No. [176] at 12.

Under Miranda, a defendant is in custody when there is a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). Whether Defendant was in custody "depends on [if] under the totality of the circumstances, a reasonable man in [his] position would feel a restraint on his freedom of movement . . . to such extent that he would not feel free to leave." United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir. 2001) (citation omitted).

Under the totality of the circumstances here, Defendant was not in custody on June 2, 2019. Even though seven to ten officers arrived at Defendant's home at 1:45 AM, Dkt. No. [165] at 15–16, 99, "a reasonable person" would have felt "at liberty to terminate the interrogation and leave."[1] Howes v. Fields, 565 U.S. 499,

---

[1] Defendant argues that under J.D.B. v. North Carolina, 564 U.S. 261 (2011), the proper custodial inquiry is whether an *addict* or *impaired* person in Defendant's position would feel free to leave since Defendant himself is an addict. Dkt. No. [174] at 2–3. But Defendant has not cited any cases supporting this contention. Id. Importantly, "[t]he test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996). The

509 (2012) (citation omitted). Defendant was in his own home, had been told he was not under arrest, and engaged in a causal and joking conversation with the officers. See Dkt. No. [165] at 26, 130, 161; see also United States v. Brown, 441 F.3d 1330, 1348–49 (11th Cir. 2006) (explaining that the defendant was not in custody even though officers confiscated his shoes because the interrogation occurred in familiar surroundings and the defendant was told he was not under arrest). Also, no guns were drawn during the encounter. See Dkt. No. [165] at 20–21; see also Moya, 74 F.3d at 1119 (stating that a suspect was not in custody when handcuffs were not used, no guns were drawn, and he was not told he was under arrest).

Furthermore, Defendant's freedom of movement was not restrained in any way during the encounter—he even went inside his shed to show an officer his motorcycle. Cf. United States v. Luna-Encinas, 603 F.3d 876, 882 (11th Cir. 2010) (finding that the defendant was not in custody even when he was told to sit down and not speak for five minutes); United States v. Peck, 17 F. Supp. 3d 1345, 1363 (N.D. Ga. 2014) (finding that the defendant was not in custody even though the defendant's movements in his home were restricted).

In sum, the record indicates that the officers who visited Defendants home never placed him in custody. Accordingly, the Court agrees with the Magistrate

---

Court finds no indication that J.D.B., which dealt with a juvenile defendant's age, has been extended to include impairment by intoxication.

Judge and finds that Defendant was not in custody on June 2, 2019. His objection to the contrary is **OVERRULED**.

### B. Voluntariness of Consent

Second, Defendant contends that his verbal consent to search was involuntary because he was intoxicated during the June 2, 2019 encounter. Dkt. No. [179] ¶ 4. The Magistrate Judge held that Defendant's consent was voluntary. Dkt. No. [176] at 19–20.

"In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989) (citation omitted). To determine the voluntariness of consent, the Court must "assess[] the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

According to the Eleventh Circuit, when a defendant is intoxicated and consents to a search, the consent was knowing and voluntary if the defendant is "coherent, . . . able to understand what was happening, and did not appear to be intoxicated." United States v. Whaley, 415 F. App'x 129, 134 (11th Cir. 2011); see also United States v. Figueroa, No. 09-20046-CR, 2010 WL 1413192, at *6 (S.D. Fla. Apr. 5, 2010) (concluding that consent was voluntary when the defendant used heroin and Xanax the night before because he was coherent and able to answer basic questions). In fact, other courts have found consent to be voluntary

when defendants appeared intoxicated. See, e.g., United States v. George, 987 F.2d 1428, 1430–31 (9th Cir. 1993) (finding consent voluntary when the defendant was in critical condition and consented shortly after regaining consciousness from a heroin overdose); United States v. Gay, 774 F.2d 368, 376–77 (10th Cir. 1985) (finding consent voluntary when defendant staggered, slurred his speech, and leaned on his car to support himself).

Here, Defendant remained coherent and participated in multiple conversations with different officers. Dkt. No. [165] at 31, 76. To be sure, there were some indications that Defendant was impaired: he had been drinking and using methamphetamine prior to the encounter. Id. at 35, 66. He also drank from a liquor bottle in front of the officers during the encounter. Id. at 35, 75–76. But Defendant was still coherent and "able to understand what was happening." Whaley, 415 F. App'x at 134. Defendant had the ability to make higher order cognitive decisions. For example, as the Magistrate Judge correctly noted, Defendant was worried that someone might overhear his conversation with the officers and learn of his eagerness to cooperate. See Dkt. Nos. [165] at 37; [176] at 18. Defendant's "intoxication is a factor to consider, but that fact alone is not sufficient to undermine his consent." United States v. Hall, 565 F.2d 917, 921 (5th Cir. 1978).[2]

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. Id. at 1209.

Accordingly, the Court finds that Defendant's intoxication does not outweigh his coherence and awareness of the situation. His consent was voluntary, and the Court agrees with the Magistrate Judge. Defendant's objection to the contrary is **OVERRULED**.

**C. Seizures of Cash and Cell Phone**

Third, Defendant argues that the seizures of the cash and cell phone were not permissible under the plain view doctrine. Dkt. No. [179] ¶ 5. The Magistrate Judge held that the seizures were proper under the plain view doctrine. Dkt. No. [176] at 20.

"An officer may seize evidence that is in plain view despite the failure to obtain a search warrant if two elements are satisfied: (1) lawful access to the object seized, and, (2) the incriminating nature of the object seized is immediately apparent." United States v. Hromada, 49 F.3d 685, 690 n.11 (11th Cir. 1995) (citing Horton v. California, 496 U.S. 128, 136–37 (1990)).

Specifically, Defendant objects to seizure of *all* the cash because the officers alleged only $10,800 was drug money, but they seized $29,420. Dkt. No. [179] ¶ 5.³ Defendant does not cite any cases supporting his proposition that only the exact amount of cash to be used in an upcoming drug deal can be seized. See Dkt. Nos. [174] at 9–11; [179] ¶ 5. Furthermore, Defendant himself led officers to

---

³ The Magistrate Judge did not specifically address this issue. But the Court nevertheless agrees with his conclusion because Defendant has not raised a valid basis to disagree with his decision.

the oven, where the cash—all together—was found. Dkt. No. [165] at 61–62. By arguing that the officers should have undone the bundles of cash to count out exactly $10,800, Defendant "is attempting to place a higher burden on the government than is necessary for application of the plain view exception." United States v. Rodriguez-Alejandro, 664 F. Supp. 2d 1320, 1346 (N.D. Ga. 2009) (explaining that the seizure of four cell phones was proper even though officers did not know if all four belonged to the defendant). Here, "the incriminating nature of the currency[,]" including each bundle, "was immediately apparent." United States v. Chandler, 437 F. App'x 420, 428 (6th Cir. 2011); see also United States v. Jaimez, 15 F. Supp. 3d 1338, 1343–44 (N.D. Ga. 2013) (stating that the incriminating nature of packaged cash seized in plain view in connection with a drug investigation was readily apparent).

      The Court also agrees with the Magistrate Judge that the seizure of Defendant's cell phone was proper under the plain view doctrine because cell phones are "known tool[s] of the drug trade." United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990). Additionally, the incriminating nature of the cell phone was apparent after the wiretap provided evidence of Defendant's involvement in upcoming drug transactions. See Jaimez, 15 F. Supp. 3d at 1343 (finding the incriminatory nature of cell phones readily apparent when a wiretap provided evidence of drug transactions).

Therefore, the Court finds that the seizures of Defendant's bundle of cash and cell phone were proper under the plain view doctrine. Defendant's objection to the contrary is **OVERRULED**.

### D. Interrogation Status During Arrest

Last, it is undisputed that Defendant was in custody during the August 6, 2019 encounter. Dkt. No. [176] at 12. However, Defendant argues that the encounter was an interrogation under Miranda because the officer's action of placing Defendant in the front seat of the squad car—rather than the back seat—was designed to elicit statements from Defendant. Dkt. No. [179] ¶ 6. The Magistrate Judge held that Defendant was not interrogated under Miranda during this encounter. Dkt. No. [176] at 13.

"The term 'interrogation' under *Miranda* refers not only to express questions, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

Here, Defendant voluntarily spoke of his desire to work with the arresting officer. Dkt. No. [165] at 137; see United States v. Suggs, 755 F.2d 1538, 1541 (11th Cir. 1985) ("Voluntary incriminating statements . . . not made in response to an officer's questioning are freely admissible." (citing Miranda v. Arizona, 384 U.S. 436, 478 (1966))). In fact, as soon as Defendant spoke, the officer immediately interrupted and read Defendant his Miranda rights. Dkt. No. [165] at 137–38.

The Court does not find that the simple act of placing Defendant in the front seat was designed to elicit statements.

Accordingly, the Court agrees with the Magistrate Judge that Defendant was not interrogated during the August 6, 2019 encounter. Defendant's objection to the contrary is **OVERRULED**.

The Court therefore **ADOPTS** the R&R as the Order of the Court and **DENIES** Defendant's Motions [72, 74, 82].

## IV.   CONCLUSION

The Magistrate Judge's R&R [176] is **ADOPTED** as the Order of this Court and Defendant's Objections are **OVERRULED**. Defendant's Motion to Suppress [72], Motion to Suppress Statements [74], and Supplemental Motion to Suppress [82] are **DENIED**.

The trial in this action is hereby set to begin on **Thursday, November 4, 2021 at 1:30 P.M.** in Courtroom 2107. The pretrial conference will be held on Friday, October 29, 2021 at 10:00 A.M. in Courtroom 2107. By noon on Friday, October 15, 2021, the parties are to file the following: motions *in limine* and proposed *voir dire* questions. By noon on Friday, October 15, 2021, the Government must file a brief summary of the indictment that the parties can rely on for *voir dire*. By noon on Friday, October 22, 2021, the parties are to file responses to motions *in limine* and any objections and to those items listed above.

Excludable time is allowed through November 4, 2021, pursuant to 18 U.S.C. § 3161 (h)(7)(A) and (B)(iv), to give counsel for Defendant and the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. The Court finds that the ends of justice served outweigh the best interest of the public and the Defendant in a speedy trial and are consistent with both the best interest of the public and individual justice in this matter.

**IT IS SO ORDERED** this 4th day of August, 2021

_____
**Leigh Martin May**
**United States District Judge**